

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD76345 |
| | ) | |
| DANA M. HINDMAN, | ) | Opinion filed:  June 17, 2014 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CALDWELL COUNTY, MISSOURI**
**The Honorable Daren L. Adkins, Judge**

Before Division One:  Joseph M. Ellis, Presiding, Judge,
Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

Dana Hindman appeals from her conviction in the Circuit Court of Caldwell County of one count of possession of methamphetamine with the intent to distribute, § 195.211.  For the following reasons, the judgment is affirmed.

At about 8:30 a.m. on October 21, 2012, Deputy Dean Koch of the Lafayette County Sheriff's Department saw a tan Chevy Cavalier pull out from a gas station parking lot onto 13 Highway in Lafayette County.  The license plate on the car was in rough condition and appeared to have been tampered with.  When he ran a check on

the license plate number, Deputy Koch was informed that no such license plate was on file.  Deputy Koch turned on his lights and pulled the car over.

Roger Moultrie was driving the car, and Appellant was in the passenger seat.  As he approached the car, Deputy Koch saw Appellant spray some type of cleaner on the dashboard and start wiping it off.  Both individuals appeared to be very nervous.  Both had hollowed-out, watery, glassy, and bloodshot eyes and sunken cheeks with protruding cheekbones.  Moultrie kept his hands on the steering wheel, stared straight ahead, and remained silent.  Deputy Koch asked Moultrie for his license and proof of insurance, and he also asked Appellant for identification.  Appellant stated that she owned the car but that it was not insured.  Moultrie and Appellant provided Deputy Koch with their driver's licenses.  Appellant started to make a call on her cell phone but was asked to terminate the call by the deputy.  Appellant told Deputy Koch that they had driven to Kansas City to visit her children and had actually stopped at that same gas station at about 7:30 p.m. the previous night.[1]  When the deputy noted that Appellant hadn't spent much time with the children, Appellant stated that she had only needed to see them for a little while.

A check of the vehicle identification number indicated that it was not registered to either Appellant or Moultrie.  A check on Moultrie revealed that his driver's license had been suspended and that there was a caution warning related to him based upon a record of violence.  Upon hearing that information from his dispatcher, Deputy Koch

---

[1] No evidence was introduced indicating where Appellant lived or wherefrom she and Moultrie claimed to have driven to Kansas City or where currently heading.

2

asked Moultrie to get out of the vehicle. He then asked Moultrie for permission to search his person for safety purposes, and Moultrie consented. During the search, Deputy Koch found a hollowed-out pen in Moultrie's pocket. When questioned about the pen, Moultrie eventually admitted that he used it to smoke the "speed" that was in the coin pocket of his pants. Moultrie gave the officer permission to retrieve the "speed" from his pocket. Deputy Koch pulled a small plastic baggie wrapped in aluminum foil from Moultrie's pocket. The substance in the baggie appeared to be, and field testing confirmed that it was, a small amount of methamphetamine.

Deputy Koch asked Moultrie for permission to search the car, and Moultrie consented. Deputy Koch had Moultrie sit in his patrol car while he conducted the search.

Deputy Koch then asked Appellant to get out of the car and informed her that he was going to search it. He also asked Appellant if any of the items in the car belonged to her. Appellant got mad and upset and told Deputy Koch that she did not want him searching her car but she did not claim ownership of any of the bags or other personal items in the vehicle. Deputy Koch had Appellant sit on a guardrail as he conducted his search.

In an open tote bag on the floor of the back seat, Deputy Koch found female clothing, other female items, and a coffee cup. Because the inside of the eight-inch tall coffee cup was only three inches deep, Deputy Koch suspected that the cup had a false bottom. When he removed the false bottom, Deputy Koch discovered 48.77 grams of

3

methamphetamine inside the cup. In a pink "makeup bag"[2] that was also in the back seat, Deputy Koch found a baggie containing a small amount of methamphetamine. When he searched the trunk, Deputy Koch found scales that tested positive for methamphetamine residue and some pipes with methamphetamine residue in them. He also found a red "makeup bag" that contained a small bag of methamphetamine. After conducting his search of the vehicle, Deputy Koch placed Appellant and Moultrie under arrest. When he searched Appellant's purse, Deputy Koch found $2,269.00 in cash, mostly in small denominations.

Appellant was subsequently charged in the Circuit Court of Lafayette County with one count of class B felony possession of methamphetamine with intent to distribute. After a change of venue to Caldwell County, Appellant filed a motion seeking to have the evidence recovered during the search of the car suppressed. She claimed that she owned the car and, therefore, had standing to challenge the search. She argued that the deputy did not have valid consent to search the car because she, as the owner of the car, expressly denied such consent and Moultrie did not have an ownership interest in the vehicle. She further argued that the deputy lacked probable cause to justify a search of her automobile and that no other exception to the warrant requirement was applicable. Following a hearing on the motion, the trial court denied Appellant's motion to suppress.

---

[2] With regard to the two "makeup bags" found in the car and searched by Deputy Koch, no makeup was actually found inside those bags. The term simply reflects Deputy Koch's description of the type of bag discovered and searched.

Appellant was tried by jury and found guilty as charged. She was sentenced, in accordance with the jury's recommendation, to a term of seven years imprisonment.

In her sole point on appeal, Appellant contends that the trial court erred in denying her motion to suppress evidence discovered during the search of the car and subsequently admitting evidence and testimony related to the fruits of that search. She claims that the search of the car violated her Fourth Amendment right to be free from unreasonable search and seizure because the deputy did not have her consent to conduct such a search.[3]

"When reviewing the trial court's overruling of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Loyd*, 338 S.W.3d 863, 865 (Mo. App. W.D. 2011) (internal quotation omitted). "We reverse the trial court's decision only if it was clearly erroneous." *Id*. In making that determination, "[t]his Court defers to the trial court's factual findings and credibility

---

[3] In multifarious fashion, Appellant also contends that the evidence discovered in the search should have been suppressed because Deputy Koch asked questions that were unrelated to the license plate irregularities and which were, therefore, improper. Appellant fails to elaborate on what specific lines of inquiry were inappropriate or why the asking of the questions somehow warrants the suppression of physical evidence discovered in the vehicle during the search. More importantly, Appellant failed to challenge the reasonableness of the detention or the deputy's questioning of Moultrie and/or herself at the trial court level, and she advances these arguments for the first time on appeal. She did not object below to any testimony related to the questions asked by Deputy Koch or the answers provided thereto. Accordingly, even if the nature of her argument could be discerned, no claim related to the reasonableness of the detention or the nature of the officer's questions has been preserved for appellate review. *State v. Overton*, 261 S.W.3d 654, 667 (Mo. App. S.D. 2008). "'The defendant is bound by the arguments made and the issues raised at trial and may not raise new and totally different arguments on appeal.'" *State v. Pesce*, 325 S.W.3d 565, 573 (Mo. App. W.D. 2010) (quoting *State v. Winfield*, 5 S.W.3d 505, 515 (Mo. banc 1999)). We gratuitously note, however, that nothing in the record reflects that the deputy's detention of Moultrie and Appellant or his questioning of them exceeded the bounds of propriety under the circumstances presented.

determinations, and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." ***State v. Pesce***, 325 S.W.3d 565, 569 (Mo. App. W.D. 2010) (internal quotation omitted).  But we review *de novo* whether the Fourth Amendment was violated under the facts of the case.  ***Loyd***, 338 S.W.3d at 865. Where, as here, specific findings and conclusions were not made, the trial court's ruling will be affirmed on any reasonable basis supported by the record.  ***State v. Foster***, 392 S.W.3d 576, 578-79 (Mo. App. S.D. 2013).

"The Fourth Amendment to the United States Constitution guarantees that '[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated.'"  ***State v. Faruqi***, 344 S.W.3d 193, 204 (Mo. banc 2011).  "Article I, section 15 of the Missouri Constitution provides the same guarantees against unreasonable search and seizures; thus, the same analysis applies to cases under the Missouri Constitution as under the United States Constitution."  ***State v. Oliver***, 293 S.W.3d 437, 442 (Mo. banc 2009).

"Generally, subject to certain exceptions, warrantless searches and seizures are deemed *per se* unreasonable."  ***Loyd***, 338 S.W.3d at 865.  "In determining whether or not an exception applies to the search at hand, we consider what the officer had reason to believe at the time of his search."  ***State v. Breese***, 250 S.W.3d 413, 418 (Mo. App. S.D. 2008).

"Consent searches are a valid exception to the warrant requirement of the Fourth and Fourteenth Amendments."  ***State v. Woolfolk***, 3 S.W.3d 823, 831 (Mo. App. W.D. 1999).  "An officer may at any time ask a citizen whether he has contraband in his car

6

and may ask for permission to search; if consent is given without coercion, the subsequent search is not prohibited by the Fourth and Fourteenth Amendments." *Id*. Deputy Koch asked for and received permission from Moultrie, the driver of the car, to conduct a search of the vehicle.[4]  Contrary to Appellant's assertion on appeal, a non-owner driver of a vehicle has sufficient authority to grant valid consent to search the vehicle.  *United States v. Thomas*, 93 F.3d 479, 486 (8th Cir. 1996); *United States v. Jaras*, 96 F.3d 764, 766 (5th Cir. 1996); *United States v. Crain*, 33 F.3d 480, 484 (5th Cir. 1994), *cert denied*, 115 S.Ct. 1142 (1995).

Even assuming, *arguendo*, that Appellant's alternative argument is correct and that a car owner passenger's express denial of consent to search the car overrides consent granted by a driver with no ownership interest in the vehicle, Appellant's argument presupposes that ownership of the car was conclusively proven.  Indeed, proof of Appellant's ownership interest in the car was necessary for her to even clear the initial hurdle to her motion to suppress – the establishment of standing to challenge the validity of the search.  "[T]he 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'"  *State v. Brown*, 382 S.W.3d 147, 157 (Mo. App. W.D. 2012) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)).  While the State has the burden of production and persuasion to show by a preponderance of the evidence that the defendant's motion to suppress should be denied, the defendant bears the initial,

---

[4]  Appellant makes no claim that Moultrie's consent was in any way coerced.

threshold burden of proving that she has been aggrieved by the search or, stated another way, that she has standing to challenge the search by demonstrating that she had a legitimate expectation of privacy in the place or thing that was searched.[5] *State v. Woodrome*, 407 S.W.3d 702, 709 n.3 (Mo. App. W.D. 2013).

A mere passenger with no ownership interest in an automobile generally lacks the requisite standing to challenge a search of the vehicle on Fourth Amendment grounds.[6] *State v. Shoults*, 159 S.W.3d 441, 445 (Mo. App. E.D. 2005). Something more than permissive presence in the automobile is required to establish a legitimate expectation of privacy in the vehicle.

The only basis upon which Appellant claimed standing to challenge Deputy Koch's search of the car was her assertion of ownership of that vehicle. The only evidence presented by Appellant in support of her claim of ownership was her own, self-serving testimony that she was the sole owner of the car. The trial court was not required to accept that testimony as credible, and this Court must defer to the credibility determinations of the trial court. *Pesce*, 325 S.W.3d at 569. Indeed, evidence was introduced indicating that the car was not registered to Appellant or insured by her, and

---

[5] Appellant has only asserted that she has a legitimate expectation of privacy in the car. She has never asserted any ownership or privacy interest in any of the various bags or items contained within the car. "It is well settled, as to Fourth Amendment standing, that a defendant can have a legitimate expectation of privacy in personal items regardless of location." *State v. Ramires*, 152 S.W.3d 385, 400 (Mo. App. W.D. 2004).

[6] A passenger may, however, challenge the propriety of his or her detention and seek to have suppressed evidence obtained as a result of their unconstitutional seizure. *State v. Shoults*, 159 S.W.3d 441, 445 (Mo. App. E.D. 2005); *see also* *United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007) ("A passenger in a vehicle ordinarily has no expectation of privacy in the vehicle, and thus does not have standing to challenge the validity of consent given by a driver of the vehicle. . . . However, courts have distinguished standing to challenge consent from standing to challenge evidence discovered as fruit of an unlawful detention.") (internal quotation omitted).

8

Appellant did not submit into evidence a bill of sale, title, or any other documentation reflecting that she had an ownership interest in the vehicle. The trial court was simply not required to, and presumably did not, believe Appellant's testimony that she owned the car. Viewing the record in the light most favorable to the trial court's ruling, the trial court could reasonably have determined that Appellant failed to prove that she had an ownership interest in the car and that she, therefore, lacked standing to challenge the search on Fourth Amendment grounds and, furthermore, she lacked any authority to grant or refuse consent to search the vehicle.

For the foregoing reasons, the trial court's denial of the motion to suppress cannot be deemed clearly erroneous. The judgment is affirmed.

_____
Joseph M. Ellis, Judge

All concur.

9