

# In the Missouri Court of Appeals
## Western District

STATE OF MISSOURI,          )
                Appellant,  )
v.                       )       **WD78971**
                       )
FREDRICK WILLIAMS,     )      FILED: April 12, 2016
           Respondent.  )

## APPEAL FROM THE CIRCUIT COURT OF JOHNSON COUNTY
### THE HONORABLE WILLIAM B. COLLINS, JUDGE

### BEFORE DIVISION ONE: LISA WHITE HARDWICK, PRESIDING JUDGE,
### VICTOR C. HOWARD AND GARY D. WITT, JUDGES

Fredrick Williams was charged with possession of a controlled substance after police found methamphetamine in the trunk of a vehicle he was driving. The circuit court granted Williams' motion to suppress the evidence obtained from the trunk based on an unlawful search and seizure. In this interlocutory appeal pursuant to Section 547.200.1(3),[1] the State contends the court erred in suppressing the evidence because Williams does not have standing to challenge the search of the vehicle that was owned by his girlfriend. For reasons explained herein, we find no error and affirm the suppression order.

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

**FACTUAL AND PROCEDURAL HISTORY**

On May 2, 2014, at 3:53 a.m., Officer John Newman of the Holden Police Department called dispatch to check the Missouri license plate number of a vehicle driving near the intersection of 4th and Vine in Holden, Missouri. Dispatch responded that the license number was not registered with the Missouri Department of Revenue. Officer Newman stopped the vehicle.

Williams was driving the vehicle at the time of the stop. His girlfriend, Amanda Edmonds, was in the front passenger seat. Officer Newman obtained the car's registration paperwork and determined that Edmonds had recently purchased and registered the vehicle.[2] Williams stated that he drove the car because his girlfriend was too tired to drive. Williams informed Officer Newman that his driver's license was suspended and gave him a non-driver's identification card. Officer Newman also obtained Edmonds' identification, and returned to his patrol car.

Dispatch confirmed that Williams' driver's license was suspended and informed Officer Newman that Williams had a warrant for his arrest in Randolph, Missouri. Williams complied with Officer Newman's request to exit the vehicle. Officer Newman observed that Edmonds was asleep during most of the traffic stop.

---

[2] The documentation showed that Edmonds had registered the vehicle the day before the traffic stop.

2

While waiting for dispatch to inform him whether Williams should be taken into custody on the Randolph warrant, Officer Newman informed Williams that he was going to be arrested for driving with a suspended license. Officer Newman asked Williams to empty his pockets. Williams removed several bundles of cash from his pockets. Officer Newman became suspicious because the money was bundled in a manner commonly used by drug dealers.[3] Based upon that suspicion, Officer Newman asked Williams to consent to a search of the vehicle. Williams denied consent, stating that Edmonds owned the vehicle and that he did not want to disturb her sleeping.

Dispatch informed Officer Newman that Randolph would not take Williams into custody on its outstanding warrant. Officer Newman then placed Williams under arrest for driving with a suspended license. Based on his suspicion that Williams had been engaged in drug transactions, Officer Newman called Sergeant Matthew Bond and requested that a canine unit be brought to the scene.

Sergeant Bond arrived on the scene approximately 40 minutes later. Officer Newman removed Edmonds from the vehicle and placed her in the back of the patrol car.[4] Sergeant Bond's canine, Drako, began pulling toward the trunk of the vehicle. Sergeant Bond conducted a canine sniff of the interior of the vehicle during which Drako alerted to the seam of the back seat and the trunk.

---

[3] Officer Newman testified that Williams had a large bundle of cash with several smaller bundles wrapped separately inside of the large bundle. He stated that drug dealers preferred to bundle their money "in different increments or different styles" in order to more easily remember the source of the money.

[4] Officer Newman testified that he placed Edmonds in the patrol car because it was a cold night and she was wearing a dress. He described her as "lethargic" and stated that she fell asleep in the patrol car.

3

The officers searched the trunk, where they found a large black bag which contained a "six-ton bottle jack." The jack was too large to be used for the vehicle and appeared to be nonfunctioning. Upon closer inspection, Sergeant Bond discovered that the jack was hollow and contained a clear plastic bag with methamphetamine.

The State charged Williams with possession of a controlled substance. Williams filed a motion to suppress the methamphetamine found in the vehicle's trunk. Williams conceded that the initial traffic stop was lawful and that the stop was lawfully extended because of his suspended license and outstanding warrant. However, Williams argued that the purpose of the stop was accomplished as soon as Officer Newman determined that: (1) the vehicle was lawfully registered to Edmonds; (2) Edmonds' driver's license was valid; and (3) Williams would not be taken into custody on the Randolph warrant. Williams argued that because Officer Newman "had not acquired specific, articulable facts that would give rise to objectively reasonable suspicion that the driver or passenger were involved in criminal activity," he should have "allowed [Edmonds] to take her vehicle and proceed on her way." Williams argued that because the search of the vehicle came only after the investigatory detention lawfully should have ended, any evidence obtained as a result of the search should be suppressed.

At the suppression hearing, the State argued that Williams was claiming "that he was aggrieved [by an unlawful search and seizure] because [Edmonds] and her vehicle were detained, not because he was lawfully detained." Thus, the State

4

asserted that Williams did not have standing to challenge the search of the vehicle because Williams "is not aggrieved by another person's detention."

The circuit court granted Williams' motion to suppress the evidence obtained from the search of the vehicle. The court reasoned that Officer Newman lacked reasonable suspicion that illegal activity was occurring. In its order, the court ruled that "all evidence obtained subsequent to the arrest of [Williams] for driving while suspended, including physical evidence and statements of witnesses, is hereby suppressed." The State appeals the suppression order.

## STANDARD OF REVIEW

Review of the circuit court's decision to grant a motion to suppress is for an abuse of discretion. *State v. Selvy*, 462 S.W.3d 756, 764 (Mo. App. 2015). We will reverse the ruling only if it is clearly erroneous. *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990). "Our review is limited to determining whether the trial court's decision is supported by substantial evidence." *Selvy*, 462 S.W.3d at 764. In making that determination, we view the facts and reasonable inferences in the light most favorable to the circuit court's ruling. *Id.*

## ANALYSIS

The State contends the circuit court erred in granting Williams' motion to suppress because Williams does not have standing to challenge the search of his girlfriend's vehicle. The State claims that because Edmonds owned the vehicle that the officers searched, Williams cannot be aggrieved by an unlawful search of that property.

5

The Fourth Amendment to the United States Constitution guarantees that individuals will not be subject to unreasonable searches or seizures. However, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (citations omitted).

Although the State has the ultimate burden of showing that a motion to suppress should be overruled, the movant has the initial burden of proving that he is a person who is "aggrieved" by an unlawful search and seizure pursuant to Section 542.296. *State v. Ramires*, 152 S.W.3d 385, 395 (Mo. App. 2004). "The language of section 542.296.1, conferring standing to file a motion to suppress upon an 'aggrieved' person, is nothing more than a codification of the standing requirements under the Fourth Amendment as set forth by the United States Supreme Court." *State v. Brown*, 382 S.W.3d 147, 157 (Mo. App. 2012). Thus, the movant must establish that he has standing to challenge the search by showing that "he has a legitimate expectation of privacy in the place or thing searched." *Id.* at 158 (citation omitted). A two-part test exists for determining whether the movant has a legitimate expectation of privacy. First, the movant must have had an "actual, subjective expectation of privacy in the place or thing searched." *State v. McCrary*, 621 S.W.2d 266, 273 (Mo. banc 1981). Second, that expectation of privacy must be objectively "reasonable" or "legitimate." *Id.*

The State asserts that Williams could not have had an actual, subjective expectation of privacy in the vehicle because, when Officer Newman asked him for

6

consent to search the vehicle, Williams indicated that he did not own the car. The State claims that Williams thereby "disowned any possible privacy interest in the car."

Viewing the record in the light most favorable to the ruling, the circuit court could have reasonably concluded that Williams had a subjective expectation of privacy in the vehicle. Although there was testimony that Williams stated that Edmonds owned the vehicle, Officer Newman also testified that Williams denied consent because he did not want to disturb Edmonds' sleep. Thus, the circuit court could have concluded that Williams had control over the vehicle and denied consent because he did not want the officers waking his girlfriend—and not because he believed that he did not have an expectation of privacy in the car as a non-owner driver.

The State further claims that any expectation of privacy that Williams may have had in the vehicle was not objectively reasonable or legitimate. The State points out that a defendant who asserts "neither a property nor a possessory interest in the automobile" does not have an objectively reasonable expectation of privacy. *Rakas*, 439 U.S. at 148, 99 S.Ct. 421. Thus, the State argues that Williams is akin to a "mere passenger" in the vehicle and, under *Rakas*, lacks standing to challenge the legality of the search of that vehicle. *Id.* at 148-49, 99 S.Ct. 421.

"Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal

7

property law or to understandings that are recognized and permitted by society." *Id.* at 143 n.12, 99 S.Ct. 421. The U.S. Supreme Court has stated that because one of the main rights associated with property is the right to exclude others, "one who owns or *lawfully possesses or controls* property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." *Id.*, 99 S.Ct. 421 (emphasis added).

Missouri courts have noted that a defendant does not obtain standing to challenge the search of a vehicle by showing only that he possessed the vehicle or that he was merely driving the vehicle. *State v. Toolen*, 945 S.W.2d 629, 632 (Mo. App. 1997). Rather, to have standing to challenge the search, the defendant would need to show that he had permission from the owner to possess or control the vehicle. *See Id.* In other words, "[w]here the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle." *State v. Childress*, 828 S.W.2d 935, 941 (Mo. App. 1992) (citation omitted).

The State relies on *State v. Sullivan*, 935 S.W.2d 747 (Mo. App. 1996), to support its assertion that Williams has no standing to challenge the search based merely on the fact that he was driving the vehicle. In *Sullivan*, the Southern District found that a non-owner operator of a boat, which was owned by one of the passengers, did not have standing to challenge the search of the boat. *Id.* at

8

755.[5]  The court reasoned that although the defendant was operating the boat, "he was not the owner of the boat and as such he had no expectation of privacy in the boat."  *Id.*

Since *Sullivan*, however, our Supreme Court has suggested that a person driving a rental car—with the authorized driver under the rental contract riding as a passenger—may have standing to challenge the search of the car notwithstanding the fact that the rental company had not authorized that person to drive.  *See State v. Sund*, 215 S.W.3d 719 (Mo. banc 2007).  In *Sund*, the State argued that a permissive driver of a rental car lacks a reasonable expectation of privacy in the car.  *Id.* at 722 n.4.  The Court stated that "even were there merit to the State's *questionable contention*," the permissive driver in that case had standing because the search resulted from the unlawful detention of her person.  *Id.* (emphasis added).  Thus, although finding that the driver had standing on other grounds, the Court suggested that an unauthorized driver may have standing to challenge the search of a rental car when the authorized driver of the vehicle is present as an occupant.  As we stated in *Brown*, "[w]hile the language in *Sund* may have been dictum . . . *Sund* provides us with guidance as to how our Supreme Court might view the issue of a permissive driver's reasonable expectation of privacy when [that driver] receives permission to use the vehicle from the authorized driver."  382 S.W.3d at 159.

---

[5]  The defendant in *State v. Sullivan* claimed that he had "automatic" standing to challenge the search "where the same possession needed to establish standing is an essential element of the crime charged."  935 S.W.2d 747, 755 (Mo. App. 1996).  The court noted that the "automatic standing rule is no longer the law in Missouri."  *Id.* (internal quotations omitted).

In this case, there was sufficient evidence to support the circuit court's ruling that Williams had permissive control of the vehicle. The officers' testimony at the suppression hearing revealed that Edmonds was Williams' girlfriend and that Williams was driving her car late at night while she slept in the passenger seat. Officer Newman stated that Williams explained that he was driving despite having a suspended license because Edmonds was too tired to drive. Officer Newman testified that Edmonds was "lethargic" and slept throughout most of the traffic stop, including falling asleep in the patrol car during the search. The circuit court could have reasonably concluded that Williams had control over the vehicle pursuant to Edmonds' permission while she slept.

The circuit court's ruling is consistent with recent cases where we have recognized that a non-owner driver has sufficient control over a vehicle to provide valid consent to a search of the vehicle. *Selvy*, 462 S.W.3d at 768 n.6;[6] *State v. Hindman*, 446 S.W.3d 683, 687 (Mo. App. 2014).[7] Although Officer Newman was aware that Edmonds owned the vehicle, and that it was registered in her name, he asked Williams to consent to a search of the vehicle because he believed

---

[6] In *State v. Selvy*, 462 S.W.3d 756 (Mo. App. 2015), the Eastern District affirmed the circuit court's suppression of evidence found in a vehicle the defendant was driving. The vehicle belonged to the defendant's sister. *Id.* at 761. Because the detention of the defendant's person lasted beyond the time necessary to effect the initial purpose of the stop, the search of his sister's vehicle was the result of an unlawful detention, and the evidence was therefore suppressed. *Id.* at 768. The court also concluded that the defendant's consent was involuntary. *Id.* at 769.

[7] In *State v. Hindman*, 446 S.W.3d 683, 685 (Mo. App. 2014), police stopped a vehicle owned by the defendant, but driven by her friend. The defendant was present in the vehicle as a passenger. *Id.* Upon the officer's request, the defendant's friend consented to a search of the vehicle, in which officers found drugs. *Id.* at 685–86. In upholding the search of the vehicle as lawful, we stated that "a non-owner driver of a vehicle has sufficient authority to grant valid consent to search the vehicle." *Id.* at 687.

10

that Williams, as the driver, "had the ultimate decision" as to whether to provide consent. In other words, Officer Newman did not seek to obtain consent from Edmonds because he believed Williams to be asserting control over the vehicle with his sleeping girlfriend's permission.

Because the evidence showed that Williams was driving the vehicle with the owner's permission, Williams had a legitimate expectation of privacy in the vehicle at the time of the traffic stop. Therefore, Williams has standing to challenge the resulting search of the vehicle. The circuit court's ruling was not clearly erroneous. The State's point on appeal is denied.

### CONCLUSION

We affirm the circuit court's suppression order.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

11