

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | **WD82980** |
| **Respondent,** | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | |
| **DEION D'WAYNE CRUM,** | ) | **February 2, 2021** |
| | ) | |
| **Appellant.** | ) | |
| | ) | |

### Appeal from the Circuit Court of Jackson County, Missouri
### Honorable Bryan Round, Judge

### Before Division Two: Lisa White Hardwick, P.J.,
### Thomas H. Newton and Karen King Mitchell, JJ.

Mr. Deion D'Wayne Crum appeals the conviction following a Jackson County Circuit Court bench trial for one count of possession of a controlled substance in violation of section 579.015.[1] Mr. Crum alleges that the trial court erred in overruling a motion to suppress evidence and in admitting the evidence at trial because those rulings violate the constitutional right to be free from unreasonable search and seizure. We reverse and remand.

Mr. Crum filed a motion to suppress evidence seized by police during the search of his apartment, including oxycodone, as well as any forensic testing, and the statements Mr. Crum made about those items. He was charged with one count of

---

[1] All statutory references are to RSMo. 2016 unless otherwise indicated.

1

possession of a controlled substance.  The trial court held a hearing on the motion to suppress, and the following testimony was adduced. An anonymous caller reported that some cars were parked at an apartment complex and it appeared to be a narcotics sale. Officer Joseph Chabot was field training interim Officer Dillon Pifer, when they were dispatched to the area of the suspicious drug activity at 4:40 p.m.  Officers Chabot and Pifer testified that when they pulled into the complex, two of the vehicles immediately sped off and another one turned west toward the police vehicle and sped away. Officer Chabot was able to obtain the temporary license plate number to a white Chevy Malibu that was registered to Mr. Crum. When the officers ran the license plate, they learned that Mr. Crum had three city warrants and a pickup order for homicide.[2]

Officers Chabot and Pifer contacted the homicide unit and obtained the address of Mr. Crum's girlfriend's (Ms. Taelor Moore) apartment. Later that evening, at 6:15 p.m., the officers went to Ms. Taelor Moore's residence with the intent to arrest Mr. Crum.[3] Officers Chabot and Pifer testified that when the officers arrived at the apartment parking lot they observed the white Chevy Malibu that sped away from them earlier in the day. After confirming the license plate and registration to Mr. Crum, Officer Pifer called for an additional unit.  Officers Bax and Richardson responded to the call and  posted at the front door of the apartment while Officers Chabot and Pifer posted at the back door. Officer Bax testified that Officers Chabot and Pifer let him and Officer Richardson in the back door and he did not hear anyone verbally consent

---

[2] The record does not identify the type of warrants Mr. Crum had at the time of the search.  However, Officer Chabot testified at the suppression hearing that Mr. Crum had outstanding *city* warrants.

[3] Mr. Crum testified that he lived with Ms. Moore at the apartment, but  he was not on the lease; however, the utilities were in his name, and he kept his personal belongings there.

to enter the home. Officer Chabot testified that the officers had their guns drawn when they entered the apartment and while they searched for Mr. Crum. Officer Pifer testified that Ms. Moore gave verbal consent on the first request to search the apartment for Mr. Crum. However, he was impeached on cross-examination and testified that he did not hear the conversation where Ms. Moore gave verbal permission to search the apartment for Mr. Crum.

Upon searching the apartment, the officers found Mr. Crum exiting a bedroom closet with his hands up. Officer Chabot testified that while the arrest was being made, and before the written consent to search the apartment was obtained, they observed contraband: some pills and other paraphernalia in the closet near Mr. Crum. Once Ms. Moore signed the written consent form to search the apartment, Officers Chabot and Pifer went back to collect the contraband. Officers Chabot, Pifer, and Bax each testified that neither Mr. Crum nor Ms. Moore objected to the search of the apartment.

Detective Heather Leslie was assigned to investigate and interview Mr. Crum. Mr. Crum signed a *Miranda* warning and waiver and gave a recorded interview conducted by Detective Leslie. Mr. Crum also gave written consent to search the white Chevy Malibu and take a buccal swab. Detective Leslie testified that when she asked to search the car, Mr. Crum stated "I don't give a damn, just like when they searched my house."

The trial court denied Mr. Crum's motion to suppress and the motion to reconsider on the same day, within hours of each other. As to the motion to suppress, the court stated the following:

3

The Defendant's contention that the search of the apartment violated his 4th Amendment rights to be free of "unlawful search and seizures." Specifically, he alleges that:

19. In this case, police officers entered the Defendant's home without a search warrant and without consent. They searched and found both Defendant and the items complained of above.

20. Because the entry into and search of the home were unlawful, any items recovered from the search are a result of the unlawful search.

21. Similarly, because the entry into and search of the home were unlawful, any evidence derived from the search, including statements from Defendant, is fruit of the poisonous tree and ought to be suppressed.

*The Court acknowledges that the search was conducted without a warrant but the evidence presented at the hearing on the Defendant's Motion does not persuade the Court that Ms. Moore failed to give consent to search the premises or that the consent was not voluntarily given.*

(emphasis added).

The trial court also denied Mr. Crum's motion to reconsider stating;

[W]hen considering the other factors set forth in *State v. Salt*, 48 S.W.3d 677, 680-81 (Mo.App. S.D. 2001) the *Defendant does not establish* that the consent given by Ms. Moore was involuntary. Finally, as *Ms. Moore did not testify*, any finding that her consent was somehow coerced or otherwise involuntarily given would be mere speculation in that such a finding must, at least as a preliminary matter and in large part, be based on Ms. Moore's personal belief."

(emphasis added).

Mr. Crum timely appeals.

**Legal Analysis**

Mr. Crum raises two points on appeal, both directed at the trial court's overruling of his motion to suppress and subsequent admission of evidence. "A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous." *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). The trial court's ruling will be deemed clearly erroneous if, after review of the entire record, [we are] left with the definite and firm impression that a mistake has been made." *Id*.

4

In reviewing the trial court's overruling of a motion to suppress, this Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling. Deference is given to the trial court's superior opportunity to determine the credibility of witnesses. This Court gives deference to the trial court's factual findings but reviews questions of law *de novo.*

*State v. Gaw*, 285 S.W.3d 318, 319–20 (Mo. banc 2009) (citations omitted).

**The Trial Court Misapplied the Burden of Proof**

In the first point on appeal, Mr. Crum argues that the trial court erred in overruling his motion to suppress and subsequently admitting evidence recovered in the search of his home because, in overruling the motion, the court improperly placed the burden of proof on Mr. Crum, rather than the State. We agree. First, we read the orders denying the suppression motion and the motion for reconsideration together, as they were made on the same day and only hours apart from each other. Here, there is no dispute that Officer Chabot and Officer Pifer conducted a warrantless search of Ms. Moore' residence.

Under section 542.296.1, "[a] person aggrieved by an unlawful seizure made by an officer ... may file a motion to suppress the use in evidence of the property or matter seized." § 542.296.1. Beyond "the initial burden of proving that he is a person who is 'aggrieved' by an unlawful search and seizure," a defendant does not have to produce any evidence, because the State "has the ultimate burden." *State v. Williams*, 485 S.W.3d 797, 800-01 (Mo. App. W.D. 2016) (citing *State v. Ramires*, 152 S.W.3d 385, 395 (Mo. App. W.D. 2004).

With respect to a motion to suppress, the State bears both the burden of producing evidence and persuading the trial court by a preponderance of the evidence to overrule the motion to suppress. § 542.296.6. "The burden of persuasion is defined

5

as "a party's duty to convince the fact-finder to view the facts in a way that favors that party." *Ramires,* 152 S.W.3d 395 (citations omitted).

Here, the trial court plainly placed the burden of proof on Mr. Crum. Reading the two orders together, the trial court clearly erred in imposing the burden of proof on Mr. Crum when it found that;

> The Defendant cross-examined these witnesses (with the exception of Officer Bax) but presented no evidence of his own.

> Defendant's Motion does not persuade the [c]ourt that Ms. Moore failed to give consent to search the premises or that the consent was not voluntarily given.

> [T]he Defendant *does not establish* that the consent given by Ms. Moore was involuntary.

The language in the two orders directly calls for Mr. Crum to present evidence, persuade the court, and establish that consent was not given. These statements cannot be viewed as mere surplusage because, if removed, nothing else of substance explains the trial court's ruling in both orders.

"It is the province of the trial court to determine what actually took place, and we defer to that determination." *State v. Parkman*, 517 S.W.3d 685, 690 (Mo. App. S.D. 2017) (quoting *State v. Spradling*, 413 S.W.3d 670, 675 (Mo. App. S.D. 2013)). "Therefore, when the trial court does not decide critical facts governing the issue of consent, we cannot usurp its role and make the determination ourselves." *Id*. "Instead, we must remand the case to allow the trial court to perform that crucial task." *Id*. Here, the trial court failed to engage in its function to determine whether Ms. Moore's consent was voluntarily given, and we will not substitute our own judgment on matters of credibility from a cold record. *See U. S. v. Raddatz*, 447 U.S. 667, 679 (1980)

6

("[C]ourts must always be sensitive to the problems of making credibility determinations on the cold record."). The testimony of Officers Chabot and Pifer was substantially different regarding *how* and *whether* consent was given to search for Mr. Crum. The trial court did not find, one way or the other, whether it believed Officer Chabot's testimony or Officer Pifer's testimony. The trial court expressly stated, "Finally, as Ms. Moore did not testify, *any finding that her consent was somehow coerced or otherwise involuntarily given would be mere speculation* in that such a finding must, at least as a preliminary matter and in large part, be based on Ms. Moore's personal belief." The trial court, by stating that a finding for consent. . . would be mere speculation, effectively declined to determine whether the officers were credible.

The trial court has a duty to make factual determinations as to whether consent was voluntary or involuntary and, thus, would have had to make credibility determinations of the officers' testimony. And the burdens of proof and persuasion do not shift from the State to Mr. Crum because the trial court declined to resolve credibility and factual issues. Point one is granted.

Mr. Crum's second point on appeal argues that the evidence, as presented, failed to meet the State's burden of demonstrating that Ms. Moore's consent was voluntarily obtained. But, because the trial court improperly placed the burden of proof on Mr. Crum, we cannot tell how the court would have weighed the evidence if properly placing the burden on the State. The trial court mistakenly believed that it had to find Ms. Moore's consent involuntary to grant Mr. Crum's suppression motion. But, to grant Mr. Crum's motion, the court needed to determine only that the State failed to meet its burden to establish that consent was voluntarily given. The trial court viewed

the absence of Ms. Moore's testimony as a failure of proof by Mr. Crum and declared that a finding on voluntariness of her consent would be "mere speculation." It is unclear to this court how the trial court would have viewed the absence of Ms. Moore's testimony if it had properly placed the burden on the State.

## Conclusion

Because the trial court improperly placed the burden of proof on Mr. Crum the trial court's judgment is reversed and the matter remanded for the trial court to reconsider the evidence with the burden of proof on the State to establish by a preponderance of the evidence that Ms. Moore voluntarily consented to the search of the apartment.

/s/ *Thomas H. Newton*

Thomas H. Newton, Judge

Lisa White Hardwick, P.J. and Karen King Mitchell, J. concur.