

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **JESSIE L. NELSON,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD86556** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **DECEMBER 3, 2024** |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Patrick K. Robb, Judge

Before Division One:  Lisa White Hardwick, Presiding Judge, Cynthia L. Martin, Judge
and Janet Sutton, Judge

Jessie L. Nelson ("Nelson") appeals from the denial of his Rule 29.15[1] motion for post-conviction relief alleging ineffective assistance of counsel due to his trial counsel's failure to investigate and use employment records to impeach a witness, and due to counsel's failure to file a motion to suppress evidence and request a *Franks* hearing for evidence recovered from Nelson's wife's car.  Finding no error, we affirm.

---

[1]All Rule references are to the Missouri Court Rules in effect at the time Clark's *pro se* Rule 29.15 motion was filed unless otherwise noted.

## Factual and Procedural Background[2]

On November 14, 2019, Nelson was convicted by a jury of: the Class A felony of murder in the first degree, in violation of section 565.020;[3] the Class A felony of assault in the first degree, in violation of section 565.050; and two counts of the unclassified felony of armed criminal action, in violation of section 571.015. Nelson's convictions were affirmed on direct appeal by *per curiam* order. *State v. Nelson*, 635 S.W.3d 232 (Mo. App. W.D. 2021). The underlying facts and evidence supporting Nelson's convictions were set forth in the legal memorandum supporting the *per curiam* order and are included in the summary below without further attribution.

On August 6, 2018, the victims, M.J. and D.H., had just returned to D.H.'s home from a local gas station when D.H. heard someone approaching him from behind. D.H. turned and saw Nelson approaching him and holding a handgun. D.H. attempted to flee in his vehicle, but Nelson fired multiple gunshots at M.J. and D.H., killing M.J. and injuring D.H. Due to his injuries, D.H. lost control of the vehicle and it drifted down the street before colliding with trash bins and multiple parked cars. Nelson followed D.H.'s vehicle in a 2003 Mercury Grand Marquis ("Grand Marquis"), then approached D.H.'s

---

[2]"On appeal from the motion court's denial of a Rule 29.15 motion, we view the facts in the light most favorable to the underlying criminal conviction as those facts bear upon the motion court's judgment." *Libeer v. State*, 686 S.W.3d 309, 311 n.1 (Mo. App. W.D. 2024) (quoting *Morrison v. State*, 619 S.W.3d 605, 607 n.1 (Mo. App. W.D. 2021)).

[3]All statutory references are to RSMo 2016 as supplemented through August 6, 2018, unless otherwise indicated.

vehicle and fired multiple gunshots before fleeing in the Grand Marquis. D.H. survived but lost the use of his limbs due to his gunshot wounds.

Multiple witness reports placed the Grand Marquis associated with Nelson at the scene of the shooting, with a witness ("Witness 1") capturing a photo of the vehicle as well as a number they believed matched the license plate. Law enforcement used this information and eventually located a Grand Marquis with a license plate number similar to the one reported by Witness 1. The Grand Marquis was registered to Nelson's wife with a "transfer on death" to Nelson. D.H. identified Nelson as the shooter from a photo array shown to him by law enforcement. D.H. told police that he did not personally know Nelson but recognized him as a person who had initiated a conversation with M.J. at a gas station around sixteen hours before the shooting.

Later that same evening, police stopped Nelson's wife who was driving a Grand Marquis that matched the description provided by witnesses. After repeated dishonesty in response to questions regarding her husband, Nelson's wife was arrested for interfering with an investigation. The Grand Marquis was then seized by law enforcement and searched following receipt of a warrant on August 8, 2018. Inside, police found a spent shell casing that was fired from the same gun as several shell casings that were recovered from the scene of the shooting.

Following his convictions, Nelson filed a timely *pro se* motion for post-conviction relief, pursuant to Rule 29.15, on March 8, 2022. Counsel for Nelson entered their appearance on behalf of Nelson on March 9, 2022, and filed a timely amended motion for

3

post-conviction relief ("Amended Motion") on July 6, 2022.[4]  The Amended Motion

raised five claims of error.  The motion court denied all five claims following a hearing

which was conducted on May 18, 2023.  The motion court subsequently entered its

judgment ("Judgment") which included findings of fact and conclusions of law, pursuant

to Rule 29.15(j), on August 2, 2023.

Nelson's appeal from the Judgment addresses only two of his denied claims,

specifically that his trial counsel was ineffective for: (1) failing to investigate and use

---

[4]At the time Nelson's *pro se* motion and the Amended Motion were filed, the version of Rule 29.15 then in effect required the filing of an amended motion "within 120 days of the earlier of the date both the mandate of the appellate court is issued and: (1) Counsel is appointed, or (2) An entry of appearance is filed by any counsel that is not appointed but enters an appearance on behalf of movant[,]" and provided in subsection (m) that "[t]his Rule 29.15 shall apply to all proceedings wherein sentence is pronounced on or after January, 1, 2018."  Nelson's Amended Motion plainly complied with this version of Rule 29.15 as the Amended Motion was filed on July 6, 2022, 120 days after the date of Nelson's *pro se* motion.

We are aware that Rule 29.15 was further amended, effective July 1, 2023, to state that "[f]or sentences pronounced on or after January 1, 2018, postconviction relief proceedings shall be governed by the provisions of Rule 29.15 ***in effect on the date of the movant's sentencing***."  (Emphasis added).  The version of Rule 29.15 in effect at the time of Nelson's sentencing would have required his Amended Motion to be filed by May 9, 2022.  *See* Rule 44.01(a) (stating that when computing any period of time "prescribed or allowed by these rules" the day of the event after which the time period begins to run is not included and if the last day to be computed is a Saturday, Sunday, or a legal holiday then the period runs until the end of the next day that is not a Saturday, Sunday, or a legal holiday).

The version of Rule 29.15 that became effective July 1, 2023, is not applicable in this case.  It would have been impossible for Nelson to comply with the newly amended Rule 29.15(m).  His *pro se* motion, Amended Motion, and the hearing on his Amended Motion were each filed or conducted before July 1, 2023.  As a result, the amendment to Rule 29.15(m), effective July 1, 2023, does not impact the timeliness of Nelson's Amended Motion even though the Judgment was entered after the effective date of the amendment.  *See Scott v. State*, No. WD86373, 2024 WL4887460, at *2 (Mo. App. W.D. Nov. 26, 2024) (subject to post-opinion motions).

4

employment records showing that D.H. worked with Nelson in 2016; and (2) failing to file a motion to suppress evidence retrieved from law enforcement's search of the Grand Marquis and to litigate a *Franks* hearing.[5]  Relevant to these claims, the motion court found that trial counsel's failure to investigate and use employment records showing that D.H. worked with Nelson in 2016 was not prejudicial to Nelson because the records did not provide a defense to Nelson's charges and, had the records been presented at trial, the outcome would not have been different.  In addition, the motion court found that Nelson did not meet his burden of demonstrating that a motion to suppress would have been meritorious because Nelson "had no standing to request [] suppression" since he was not the owner nor an occupant of the Grand Marquis at the time of its seizure.

Nelson appeals.

## Standard of Review

"We review a motion court's denial of post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous."

---

[5]A "*Franks* hearing," patterned after the United States Supreme Court's holding in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978), is a hearing to determine whether an affidavit supporting a search warrant contains statements that are false or that were made with reckless disregard for the truth. *See State v. Mitchell*, 480 S.W.3d 410, 415 (Mo. App. W.D. 2015) (internal citations omitted).  Under *Franks*, if a defendant demonstrates by a preponderance of the evidence that "an affidavit supporting an application for a search warrant contains a deliberate falsehood or a statement made in reckless disregard of the truth (and this determination is made by the trial court after a hearing), the false or reckless statements are disregarded." *Id.* (quoting *Franks*, 438 U.S. at 155-56).  At this point, "once the 'affidavit's false material is set to one side, if the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits excluded to the same extent as if probable cause was lacking on the face of the affidavit.'" *Id.* (internal brackets omitted) (quoting *Franks*, 438 U.S. at 156).

5

*Escalona v. State*, 695 S.W.3d 104, 106 (Mo. App. W.D. 2024) (quoting *Caldwell v. State*, 686 S.W.3d 649, 652 (Mo. App. W.D. 2024)).

> [T]his includes *de novo* review for errors of law, rejection of factual findings for which there is no substantial evidence, and - in the rarest of cases - rejection of factual findings for which there may be substantial evidence but regarding which the reviewing court, nevertheless, on the entire record, is left with a definite and firm conviction (or impression) that a mistake has been made.

*Flaherty v. State*, 694 S.W.3d 413, 419 (Mo. banc 2024). "In applying this standard, appellate courts should defer to the motion court's superior opportunity to judge the credibility of witnesses and recognize the 'circuit court is entitled to believe all, part, or none of the evidence presented at the post-conviction hearing.'" *Id.* (quoting *Driskill v. State*, 626 S.W.3d 212, 220 (Mo. banc 2021)). Finally, "[w]e presume the motion court's findings and conclusions are correct." *Zarhouni v. State*, 676 S.W.3d 72, 76 (Mo. App. W.D. 2023) (quoting *Symington v. State*, 638 S.W.3d 596, 599 (Mo. App. W.D. 2021)).

**Analysis**

Nelson raises two points on appeal both arguing that the motion court clearly erred in denying his motion for post-conviction relief because Nelson was denied his constitutional right to effective assistance of counsel. In Point One, Nelson contends that the motion court erred when denying his claim that trial counsel was ineffective for failing to investigate and use employment records establishing that Nelson and D.H. worked together in 2016 because the court ignored the prejudice pled in the Amended Motion and instead "found the lack of a specific type of prejudice" which "improperly heightened the standard for claims involving the failure to present evidence." In Point

6

Two, Nelson argues that counsel was ineffective for failing to file a motion to suppress and request a *Franks* hearing regarding the evidence recovered from the search of his wife's vehicle.

In order to establish a right to post-conviction relief based on a claim of ineffective assistance of counsel, a movant must prove that their counsel's performance meets the *Strickland* test. *Caldwell v. State*, 686 S.W.3d 649, 652 (Mo. App. W.D. 2024). The *Strickland* test, which is derived from the Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), requires the movant to demonstrate, by a preponderance of the evidence, that "(1) trial counsel failed to exercise the level of skill and diligence reasonably competent trial counsel would in a similar situation, and (2) [movant] was prejudiced by that failure." *Id.* (quoting *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019)). "Both deficient performance (i.e., the performance prong) and prejudice (i.e., the prejudice prong) 'must be shown by a preponderance of the evidence . . . to prove ineffective assistance of counsel.'" *Flaherty*, 694 S.W.3d at 420 (quoting *McFadden v. State*, 553 S.W.3d 289, 298 (Mo. banc 2018)).

The performance prong "calls for an inquiry into the ***objective*** reasonableness of counsel's performance, ***not counsel's subjective state of mind***." *Flaherty*, 695 S.W.3d at 421 (quoting *Harrington v. Richter*, 562 U.S. 86, 110 (2011)). "Because of the difficulties inherent in making the evaluation, a court must indulge a ***strong presumption that counsel's conduct falls within the range of reasonable professional assistance***; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Strickland*, 466

7

U.S. at 689). To do this, Nelson must identify "specific acts or omissions of counsel that, in light of all of the circumstances, fell outside the wide range of professional competent assistance." *Zarhouni*, 676 S.W.3d at 76 (quoting *Davis v. State*, 486 S.W.3d 898, 906 (Mo. banc 2016)). "Strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable." *Id.* at 76-77 (quoting *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006)).

In order to establish the prejudice prong, Nelson "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Flaherty*, 694 S.W.3d at 422 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . [i]t is not enough to show that counsel's errors had some conceivable effect on the outcome of the proceeding." *Id.* (internal quotations omitted). "Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (quoting *Harrington*, 562 U.S. at 104).

"[A] movant's failure to sustain his burden to establish either prong of the test renders it unnecessary to discuss the remaining prong." *Caldwell*, 686 S.W.3d at 652 (citing *Taylor v. State*, 382 S.W.3d 78, 81 (Mo. banc 2012)).

***The motion court did not clearly err in denying Nelson's claim that trial counsel was ineffective for failing to investigate and use employment records (Point One)***

In his first point on appeal, Nelson argues that the motion court clearly erred in denying his claim that counsel was ineffective for failing to investigate and use employment records that would show that Nelson and D.H. worked together in 2016.

8

Specifically, Nelson contends that the motion court failed to consider the claims brought in the Amended Motion and instead substituted its own standard for prejudice that the court then found Nelson failed to establish. As a result, Nelson asserts that the case must be remanded for the motion court to make findings on the claims actually asserted in the Amended Motion.

In his Amended Motion, Nelson argued that his trial counsel was ineffective when she failed to "investigate, obtain, and use employment records for [Nelson] and [D.H.] to corroborate [Nelson]'s testimony that he and [D.H.] had worked together[.]" Nelson claimed that he was prejudiced because if the employment records had been admitted it would have boosted the credibility of his testimony at trial that he had worked with D.H. in the past; and impeached D.H.'s testimony and his identification of Nelson as the shooter thereby undermining his credibility as a witness. Nelson further argued that even if the absence of employment records "is not enough to undermine confidence in the outcome alone, the combination of the prejudice caused by this claim with that caused by [Nelson]'s other claims" creates a reasonable probability that the result would have been different.

During the motion hearing, trial counsel testified that she did not secure the employment records because Nelson's defense was that he was not at the shooting and had been misidentified. Counsel feared that introducing evidence that D.H. and Nelson had worked at the same place in 2016, and may have known one another, would only strengthen D.H.'s identification of Nelson.

9

The motion court did not determine one way or the other whether trial counsel's failure to investigate or use Nelson's employment records at trial was deficient performance. Instead, the motion court found that Nelson had failed to establish *Strickland* prejudice. The motion court credited trial counsel's testimony that any inconsistencies in Nelson's and D.H.'s testimony about whether they had previously worked together did not support Nelson's defense that he was not the shooter. Moreover, the court credited counsel's testimony that even proving that D.H. and Nelson knew each other from working together two years before the shooting did not provide a defense to his charges. The motion court found that there was no evidence in the record that would demonstrate any animosity or conflict between D.H. and Nelson or any other reason to suggest that Nelson and D.H.'s prior shared employment history would support Nelson's defense that he did not commit the crimes. As a result, the court found that "had the employment records been presented at trial, the outcome of the trial would have been no different."

On appeal, Nelson claims that the trial court ignored the prejudice pled in his Amended Motion and instead "only considered a theory of prejudice that it adopted while ignoring the prejudice that was pled." Therefore, Nelson contends that "the failure to actually consider the prejudice that was pled is clear error and requires remand for consideration of the actual claim raised." We disagree.

Nelson insists that the motion court constructed its own "specific type of prejudice" by finding that the employment records would not have provided a defense to the shooting and ignored the prejudice Nelson pled in his Amended Motion. Instead,

10

Nelson claims that the proper prejudicial standard was whether the evidence would *aid* the defense and that he is not required under the *Strickland* standard to demonstrate that the evidence would "provide a defense" in order to establish prejudice. Nelson's argument, however, conflates the performance and prejudice prong analyses.

To prevail on his claim of ineffective assistance for trial counsel's failure to investigate, Nelson must demonstrate that "(1) trial 'counsel's failure to investigate was unreasonable' and (2) Movant '***was prejudiced as a result of [trial] counsel's unreasonable failure to investigate***.'" *Hughes v. State*, 693 S.W.3d 217, 222 (Mo. App. E.D. 2024) (emphasis added) (quoting *Shockley*, 579 S.W.3d at 897). The standard that Nelson incorrectly attributes to prejudice is actually the standard for determining deficient performance, which requires Nelson to show: "1) what information trial counsel failed to discover; 2) that a reasonable investigation would have resulted in the discovery of such information; and, 3) ***the information would have aided and improved the defense***." *Walker v. State*, 694 S.W.3d 69, 78 (Mo. App. W.D. 2024) (emphasis added) (citing *Prince v. State*, 390 S.W.3d 225, 233 (Mo. App. W.D. 2013)) (finding that the three-part test applies to the performance prong analysis of ineffective assistance claims for failure to investigate). Here, Nelson claims that trial counsel's failure prejudiced him because the employment records would have ***aided*** him in impeaching D.H. However, "to establish prejudice on a failure to impeach claim, the movant has the burden of showing that, had the witness been impeached, it would have provided a viable defense, or otherwise met the *Strickland* standard." *Jones v. State*, 696 S.W.3d 450, 468 (Mo. App. E.D. 2024) (quotation omitted). *See, e.g.*, *Hughes*, 693 S.W.3d at 223 ("Merely

11

failing to impeach a witness does 'not warrant post-conviction relief unless the testimony offers a ***defense to the charged crimes***." (emphasis added) (quoting *Johnson v. State*, 406 S.W.3d 892, 904 (Mo. banc 2013))). As a result, we find no error in the motion court's prejudice analysis and deny Nelson's request to remand for failure to review the claim pled.

When reviewing the merits of Nelson's claim, we find that the motion court's findings are not clearly erroneous. The employment records, if properly introduced, could have potentially bolstered Nelson's credibility and cast doubt on D.H., however, it is not reasonably probable that the records' admission would have altered the result of Nelson's trial. Even if believed, the records do not establish an alibi or otherwise support the defense's theory that Nelson was misidentified as the shooter. Nor do the records establish any other defense to the shootings outside of creating the potential for trial counsel to have impeached D.H. In fact, the evidence had the likelihood of being more harmful than helpful to Nelson's defense as it would have been less likely that D.H. misidentified Nelson if he already knew him. *See Prince v. State*, 390 S.W.3d 225, 235 (Mo. App. W.D. 2013) (finding that where it is reasonable for counsel to have not introduced evidence as it likely would have caused more harm than good for a movant's defense there can be no reasonable probability of a different outcome had the evidence been presented).

Moreover, Nelson seemingly ignores the overwhelming evidence of guilt, independent of D.H.'s identification, present in the record. "Where . . . there is overwhelming evidence of guilt, such that it cannot be reasonably said that, but for the

challenged actions of trial counsel, the jury would have found the movant not guilty . . . the movant suffers no prejudice." *Esters v. State*, 554 S.W.3d 918, 925 (Mo. App. E.D. 2018) (quoting *McCoy v. State*, 431 S.W.3d 517, 522 (Mo. App. E.D. 2014)). Multiple witnesses placed Nelson's wife's Grand Marquis, which Nelson was known to drive, at the scene of the shooting. An anonymous tip specifically identified Nelson as the shooter. Nelson's wife told law enforcement that Nelson had borrowed her Grand Marquis around the approximate time of the shooting. After the Grand Marquis was searched, a shell casing was recovered which was fired from the same gun as the shell casings recovered at the scene of the crime. Nelson has not demonstrated how the introduction of employment records and the impeachment of D.H. creates a reasonable probability, sufficient to undermine the outcome of his trial, that he would have been acquitted in light of other evidence. As a result, we do not find the motion court's findings, that Nelson was not prejudiced by trial counsel's failure to investigate and use employment records, to be clearly erroneous.

Point One is denied.

### *The motion court did not clearly err in denying Nelson's claim that trial counsel was ineffective for failing to file a motion to suppress evidence recovered from his wife's vehicle (Point Two)*

In his second point on appeal, Nelson argues that the motion court clearly erred in denying his claim that his counsel was ineffective for failing to request a *Franks* hearing and file a motion to suppress evidence recovered from law enforcement's search of Nelson's wife's car. Nelson alleges that the evidence recovered from Nelson's wife's vehicle should have been suppressed because the search warrant used to recover the

13

evidence was supported by false or misleading information. Additionally, Nelson contends that the motion court failed to address his arguments that counsel was ineffective for failing to request a *Franks* hearing and, thus, we must remand for additional findings to address the *Franks* portion of the claim.

"[W]hether to file a motion to suppress is a matter of trial strategy . . . and counsel will not be deemed ineffective for failing to file a meritless motion to suppress." *State v. Maddix*, 935 S.W.2d 666, 672 (Mo. App. W.D. 1996) (internal citations omitted). "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as basis for a claim of ineffective assistance." *Jones v. State*, 696 S.W.3d 450, 467 (Mo. App. E.D. 2024) (quoting *Barton v. State*, 432 S.W.3d 741, 749 (Mo. banc 2014)). "Additionally, when assessing counsel's performance, the reasonableness of counsel's decision must be viewed at the time the decision occurred, taking into consideration the circumstances of the case." *Id.* (internal quotations omitted).

In his Amended Motion, Nelson contends that statements in the affidavit supporting the search warrant were "false and made with a reckless disregard for the truth." Nelson argues that the affidavit omits specific information that thereby renders several of the statements to be false or misleading. Specifically, Nelson cites the following allegations of false or omitted information in the affidavit that he argues establish its inaccuracy: (1) Witness 1 did not actually see the license plate number but instead wrote down the number that their roommate saw while also observing the shooting; (2) the anonymous tipster told police that he saw a black Crown Victoria, which he recognized as the car Nelson regularly drove, instead of a Grand Marquis; and

14

(3) Nelson's wife told police that Nelson had driven her Grand Marquis to get fuel for about fifteen minutes sometime between 5:30 p.m. and 6:00 p.m. on the day of the shooting which would mean Nelson returned to his wife before the shooting occurred at approximately 6:26 p.m.  Nelson asserts that because the affidavit is inaccurate as a result of false or misleading information, trial counsel was ineffective for failing to litigate a *Franks* hearing to support seeking suppression of the evidence recovered from Nelson's wife's vehicle based on the warrant.  During the hearing on the Amended Motion, trial counsel testified that because Nelson was not the owner of the Grand Marquis and was not an occupant of the vehicle at the time it was seized by law enforcement, she did not pursue a *Franks* hearing in an effort to support a motion to suppress because she did not think Nelson had standing to do so.[6]  The motion court found that trial counsel's performance was not ineffective and that in any event Nelson had suffered no prejudice.  The motion court found that Nelson failed to present any evidence to support finding that he had standing to seek suppression of evidence seized from a vehicle he neither owned or occupied.  Additionally, the court found that even if Nelson had standing to pursue a

_____

[6]While the State has the burden of showing that a motion to suppress should be overruled, the proponent of a motion to suppress, in this case Nelson, "has the initial burden of proving that he is a person who is 'aggrieved' by an unlawful search and seizure." *State v. West*, 548 S.W.3d 406, 413 (Mo. App. W.D. 2018) (citing *State v. Williams*, 485 S.W.3d 797, 801 (Mo. App. W.D. 2016)).  "The language . . . conferring standing to file a motion to suppress upon an 'aggrieved' person, is nothing more than codification of the standing requirements under the Fourth Amendment as set forth by the United States Supreme Court." *Id.* (quoting *Williams*, 485 S.W.3d at 801).  Thus, a movant "must establish that he has standing to challenge the search by showing that he has a legitimate expectation of privacy in the place or thing searched." *Williams*, 485 S.W.3d at 801.

15

motion to suppress, the search warrant was supported by probable cause and, thus, Nelson's suppression motion would have been denied.

On appeal, Nelson argues that the motion court erred in finding he lacked standing to successfully pursue a motion to suppress because Nelson was an owner of the Grand Marquis. In support, Nelson cites State's exhibits "40" and "41" that were admitted at trial and claims that they demonstrate the Grand Marquis was titled to "Nelson [A. L.]"[7] and transferrable on death to "Nelson Jessie." Nelson claims that these exhibits establish that the Grand Marquis was marital property giving him an interest in the vehicle sufficient to make him an "owner" of the vehicle. Nelson argues that he therefore had a reasonable expectation of privacy in the Grand Marquis sufficient to afford standing to file a motion to suppress and that the motion court's finding to the contrary is clearly erroneous.

The motion court's finding is not clearly erroneous. Despite the fact that trial counsel testified during the motion hearing that she did not pursue a *Franks* hearing in support of a motion to suppress because she did not believe Nelson had standing to do so, Nelson never argued during his hearing that trial counsel's supposition about his lack of standing was legally erroneous because he did, in fact, have standing since the Grand Marquis was marital property. His argument to that effect on appeal is not preserved for our review as it was not presented to the motion court. *See Zarhouni*, 676 S.W.3d at 77 (quoting *Mallow v. State*, 439 S.W.3d 764, 769 (Mo. banc 2014) (finding that claims that

---

[7]We refer to Nelson's wife by initials as required by section 509.520.

are not presented to the motion court cannot be raised for the first time on appeal); *and see Tisius v. State*, 519 S.W.3d 413, 431 (Mo. banc 2017) (internal citations omitted) (holding that "[p]leading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal").

More to the point, Nelson has not provided any authority, even on appeal, to support the argument that standing to pursue a motion to suppress evidence is established based solely on the status of a searched vehicle as marital property. In the absence of any such authority, Nelson has not sustained his burden to establish that trial counsel's failure to pursue a motion to suppress was deficient performance.[8] *See e.g.*, *Cothran v. State*, 436 S.W.3d 247, 253 n.3 (Mo. App. W.D. 2014) (internal citations omitted) (finding that there is a strong presumption that counsel's performance was reasonable and effective and that a movant has failed to satisfy the performance prong of the *Strickland* standard if they cannot establish that a motion to suppress would have been granted).

The motion court's finding that counsel was not ineffective for failing to pursue suppression of evidence recovered from the Grand Marquis was not clearly erroneous. Since Nelson has failed to establish that his trial counsel's performance was deficient, we need not determine whether the motion court clearly erred in finding that even if Nelson had standing he was not prejudiced because there was sufficient probable cause to

---

[8]Because Nelson fails to provide authority to support his claim that Missouri's marital property laws provide a spouse with Fourth Amendment standing to challenge a search of property titled solely in the name of the other spouse, we do not decide the issue. That proposition may be questionable. See *United States v. Jones*, 565 U.S. 400, 425-26 (2012) (Alito, J., concurring in the judgment).

17

support the issuance of the warrant to search the Grand Marquis.  *See Caldwell*, 686 S.W.3d at 652 (quoting *Taylor*, 382 S.W.3d at 81) (finding that "a movant's failure to sustain his burden to establish either prong of the test renders it unnecessary to discuss the remaining prong").

Point Two is denied.

## Conclusion

The motion court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur